UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ERIC A. LONGMIRE,                                    :

                    Plaintiff,            :          05 Civ. 6725 (SHS)
                                  ECF Case

   -against-                                          :

GUY P. WYSER-PRATTE and                              :
WYSER-PRATTE MANAGEMENT CO., INC.,

                              :

               Defendants.

-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE COMPLAINT

WARSHAW BURSTEIN COHEN
SCHLESINGER & KUH, LLP
555 FIFTH AVENUE
NEW YORK, N.Y. 10017

{493021;1}

## TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fact Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

There is No Basis Under Rule 12(f) for Striking Portions
of the Complaint or the Exhibit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    1.    The Paragraphs in the Complaint and the Appendices That
           Defendants Seek to Have Stricken are Pertinent and Material . . . .  6

    2.    The Allegations in the Complaint and Exhibit Do Not Qualify
           as "Scandalous" Within the Meaning of Rule 12(f) . . . . . . . . . . . .  6

    3.    A Review of the Allegations in the Complaint Demonstrate
           That They Are Neither Immaterial, Impertinent Nor
           Scandalous Within the Meaning of Rule 12(f) . . . . . . . . . . . . . . .  7

    4.    The Appendices Are Also Not Immaterial, Impertinent
           or Scandalous Within the Meaning of Rule 12(f) . . . . . . . . . . . . .  13

            (a)    The information in the appendices is so
                    intertwined with plaintiff's case that to
                    eliminate it would be to usurp plaintiff's
                    right to present his case fully . . . . . . . . . . . . . . . . .  19

            (b)    The information contained in the appendices
                    shows Mr. Longmire's state of mind an is
                    relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

            (c)    The majority of the information contained in
                    the appendices relate to the SEC's Telxon
                    investigation which was not sealed and which is
                    known to the public . . . . . . . . . . . . . . . . . . . . . . . .  20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ERIC A. LONGMIRE,                                    :

                          Plaintiff,        :        05 Civ. 6725 (SHS)
                                         ECF Case

   -against-                                         :

GUY P. WYSER-PRATTE and                              :
WYSER-PRATTE MANAGEMENT CO., INC.,

                                    :
                    Defendants.
-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE COMPLAINT

        This memorandum is submitted on behalf of plaintiff Eric Longmire in opposition

to defendants' motion, brought pursuant to Fed. R. Civ. P. 12(f) to strike portions of the

complaint and an exhibit thereto, on the basis that they are immaterial, impertinent and

scandalous.

### Preliminary Statement

        The facts underlying this action and relevant to this motion are fully set forth in

the accompanying affidavit of Eric A. Longmire ("Longmire Aff."). Except for the following

summary, these facts will not be repeated at length herein except as necessary to a discussion of

the applicable law.

Fact Summary

        Plaintiff was originally hired at Prudential Securities, Inc. ("Prudential") by

defendant Guy P. Wyser-Pratte ("GWP") in 1989 to work as a risk arbitrage Research Analyst in

the Risk Arbitrage Department ("Department"). During plaintiff's time at Prudential, GWP,

unaware of plaintiff's racial background, would frequently make ethnically offensive epithets which plaintiff found extremely offensive and disturbing.  After Prudential discharged GWP on December 4, 1990 for having sustained unacceptable investment losses, plaintiff suddenly was discharged as well.  GWP, and plaintiff who had no other employment offers but the one from GWP, opened Wyser-Pratte Management Co., Inc. (hereinafter "WPMC"), as an independent company involved in risk arbitrage.  Plaintiff, wanting to bring an end, at WPMC, to GWP's offensive remarks, requested that GWP cease using racial epithets in his presence and also disclosed his racial background to GWP.

After learning plaintiff's secret, GWP viciously disdained plaintiff and discriminated against plaintiff by exploiting this knowledge.  Notably, plaintiff worked at a comparatively low salary relative to other white employees who were subordinate to Mr. Longmire, despite the fact, other than GWP, he was the only employee who had investment decision-making responsibilities, he held many jobs simultaneously, and he was the senior-most executive at WPMC, second only to GWP.  GWP ultimately used plaintiff's secret disclosure, not only to select plaintiff, but also to exhort him to commit perjury in 2003 and in early 2004, in order for GWP to gain advantage in the divorce proceeding between himself and his wife, Vivien, and to protect himself from Vivien who had threatened to expose his past perjury and obstruction to the authorities with respect to the  Securities and Exchange Commission's ("SEC") insider trading investigation against the defendants in the securities of the Telxon Corporation ("Telxon").  When plaintiff refused to commit perjury in GWP's divorce proceeding, GWP exacerbated the hostility in plaintiff's work environment by embarking upon a campaign to compel plaintiff to commit perjury, which efforts escalated the more plaintiff continued to refuse to acquiesce in his illegal demands.

In January of 2004, GWP advised plaintiff that there was going to be a custody hearing at the end of the month and demanded that plaintiff testify falsely for him. GWP subsequently directly threatened plaintiff and his family when he stated to the plaintiff: "If you don't testify the way I want you to, I'm going to 'out' you. If you don't lie for me, you're dead. Think of your family." Those were the last words ever spoken to plaintiff by GWP. As set forth more fully in Mr. Longmire's accompanying Affidavit, he was especially worried about these threats, knowing of GWP's past sordid activities and the fact that GWP's nature, as revealed by his past actions, was such that he would not hesitate to carry out his threats.

The racial profiling and racial coercion had made it impossible for plaintiff to perform his job duties, therefore, after discussion with GWP's in-house counsel, it was agreed that plaintiff work from home. He subsequently learned that he had been terminated, and not just once, but twice. Later, GWP did indeed execute his threat to expose plaintiff's secret regarding his race.

The Litigation

On or about November 12, 2004, plaintiff filed a *pro se* timely Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). Although plaintiff did not having all the facts as to WPMC's legitimate payroll "headcount," he still filed his Charge, preferring to let the EEOC conduct its own jurisdictional analysis. As insurance against an adverse headcount, however, plaintiff also cross-filed a timely Complaint with the New York State Division of Human Rights (the "Division"). The defendants submitted their Statement of Position to the EEOC on January 21, 2005, wherein they challenged the EEOC's jurisdiction because WPMC had fewer than the required 15 minimum employees.

By letter dated May 9, 2005 plaintiff informed the EEOC that he had decided not to oppose the defendants' jurisdictional challenge. By letter dated March 18, 2005, the EEOC notified the Charging Party, i.e., plaintiff, that the EEOC lacked jurisdiction to investigate his Charge because of an insufficient number of employees employed at defendant WPMC which plaintiff did not contest. The EEOC also issued a "right to sue" letter to plaintiff. Plaintiff then proceeded to file a Complaint, virtually identical to the EEOC filing, containing the same appendices as exhibits, directly with the Division. The defendants filed their responsive Statement with the Division on or about April 25, 2005. Although defendants had contested (unsuccessfully) the inclusion of the appendices in the EEOC filing, upon information and belief, they had never contested the inclusion of the appendices with the filing in the Division. Subsequently, plaintiff requested that the Division treat the complaint as dismissed and to annul his election of remedies so that he may pursue his action in Court. Such request was granted on May 11, 2005. Subsequently, plaintiff initiated the instant action.


## ARGUMENT

### THERE IS NO BASIS UNDER RULE 12(f) FOR
### STRIKING PORTIONS OF THE COMPLAINT OR THE EXHIBIT

"It is well-settled law that motions under Rule 12(f) are disfavored and are rarely granted." Wahlstrom v. Metro-North Commuter Railroad Co., 1996 U.S. Dist. LEXIS 17479, No. 96 Civ. 3589 (S.D.N.Y. November 25, 1996) (Leisure, J.), at *4 (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976); Hudson's Bay Fur Sales Canada, Inc. v. Scheflin-Reich, Inc., No. 90 Civ. 8026, 1991 WL 60377 at *1 (S.D.N.Y. April 8, 1991) (Carter, J.); Index Fund, Inc. v. Hagopian, 107 F.R.D. at 100 (S.D.N.Y. 1985) (Tenney, J.)).

A motion to strike based on Rule 12(f) is not favored and should not be granted where, as here, questions of law and fact exist and there has been no discovery. In evaluating a motion to strike, the Court is to construe the pleadings liberally to give the pleading party a full opportunity to support its claims at trial, after full discovery has been made. Bennett v. Spoor Behrins Campbell & Young, Inc., 124 F.R.D. 562 (S.D.N.Y. 1989) (Leisure, J.). As such, the claims raised by plaintiff in its complaint are to be liberally construed.

Rule 12(f) provides in relevant part that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It is well-settled that a motion pursuant to Rule 12(f) must be denied unless it is demonstrated "that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted). Issues of admissibility are ordinarily not decided on the basis of the pleadings alone because they "require the context of an ongoing and unfolding trial." Id.

A motion to strike a pleading should be granted as immaterial only if there is no evidence supporting the allegation that would be admissible. Lipsky, 551 F.2d at 893, Hudson's Bay, supra, at *1. Furthermore, portions of a complaint "should be stricken on the basis of impertinence only where the allegation bears no possible relation whatsoever to the subject matter of the litigation." Wahlstrom, supra, at *7 (citing Food & Allied Serv. Trades Dep't v. Millfeld Trading Co., 841 F. Supp. 1386, 1392 (S.D.N.Y. 1994) (Sand, J.); Fra S.p.A. v. Surg-O-Flex of America, Inc., 415 F. Supp 421, 427 (S.D.N.Y. 1976) (Tenney, J.)). "A motion to strike will be denied unless the alleged scandal or impertinency has 'no possible relation" to the controversy. Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1539 (S.D.N.Y. 1985) (Goettel, J.) (citing Gleason v. Chain Service Restaurant, 300 F. Supp. 1241, 1257 (1969) (Herlands, J.)).

Courts should not strike material from a pleading based on it being scandalous if the material does not "unfairly impugn a defendant's character." See Wahlstrom, supra, at *8 (emphasis supplied). The fact that such material does not "cast a positive light on the defendant" does not warrant striking the paragraphs at issue. Id. at *8-*9.

1.     **The Paragraphs in the Complaint and the Appendices**
       **That Defendants Seek to Have Stricken are Pertinent and Material**

Defendants have provided the Court with a blacklined Complaint striking all, or a portion, of the following paragraphs: 6, 10, 15, 27-30, 31, 39, 57, 79, 82, 89, 90, 94-100, 104, 105, and 106. Obviously, the defendants prefer their blacklined version of the Complaint because it disallows plaintiff from providing the relevant background for his allegations as well as some of the critical aspects of his claims. Defendants' attempt to pick and choose which paragraphs in the complaint they feel are too offensive to them is ludicrous. It is precisely because the defendants acted outrageously, in the manner described in the Complaint, and which behavior defendants now want stricken, that the necessary facts exist which compelled, and enabled, plaintiff to bring this litigation in the first instance. As set forth below in section 3, the paragraphs at issue in the Complaint, as well as the facts in the appendices, all support plaintiff's argument that he was discriminated against by defendants on the basis of his race.

2.     **The Allegations in the Complaint and Exhibit Do Not**
       **Qualify as "Scandalous" Within the Meaning of Rule 12(f)**

The Affirmation of William C. Zifchak ("Zifchak Aff.") in support of the defendants' motion to strike, revolves around defendants contention that the inclusion of the statements would "cause irreparable damage to Mr. Wyser-Pratte's reputation in the money management, investor relations and corporate governance communities" of an individual who is

"an internationally prominent financier, arbitrager and shareholder rights advocate" who has "many philanthropic activities" and "has endowed an academic chair in his family's name at the Marine Corps University, and is President of the Board of Trustees of the Marine Corps University Foundation." Zifchak Aff., ¶¶ 3-4. However, notwithstanding the suggestions in Mr. Zifchak's Affidavit, i.e., the fact that a defendant is wealthy and powerful, whereas the plaintiff is not, is certainly not a reason to prevent a party from alleging claims of racial discrimination and harassment against him. The defendant's wealth and/or positions of power should not shield Guy Wyser-Pratte (hereinafter "GWP") from well deserved discrimination claims against him, that do not "unfairly impugn a defendant's character." Indeed, it is that very power which fostered the extreme acts of discrimination that GWP perpetrated against Mr. Longmire. It is pathet that defendants now attempt to shield their behavior from the Court on the basis of GWP's fame and fortune while leaving Mr. Longmire and his family irreparably harmed by GWP's racist behavior. These are not factors that the Court should use to rule on defendants' motion to strike.

3.   **A Review of the Allegations in the Complaint Demonstrate That They Are Neither Immaterial, Impertinent Nor Scandalous Within the Meaning of Rule 12(f)**

Defendants do not specify which of the paragraphs contained in its blacklined Complaint are to be stricken on the basis of being a) immaterial, b) impertinent or c) scandalous. In any event, as demonstrated below, the allegations which defendants seek to have stricken are not immaterial, not impertinent and not scandalous.

Paragraph 6 of the Complaint is the first allegation that the defendants seek to have stricken. This is a reference to the EEOC filing which is discussed separately below. Paragraph 10 merely contains the procedural history of the Complaint and alleges that the EEOC

issued a "right to sue" letter. Defendants do not state why they oppose that paragraph and plaintiff is perplexed at what possible objection can be had as to this paragraph. The Complaint references the EEOC administrative proceeding, not to prove the underlying facts of race discrimination, but to establish that Mr. Longmire exhausted all of his federal administrative remedies, as he is required to do, before he filed this action.

Paragraph 15 of the Complaint references the SEC Telxon insider trading investigation, not to prove the underlying liability, but for another legitimate purpose: to explain GWP's motive as to why he racially profiled and racially harassed Mr. Longmire to commit crimes and how GWP blackmailed plaintiff in an attempt to compel plaintiff to commit perjury in GWP's divorce proceeding to prevent his wife from revealing the fact that GWP committed insider trading in the securities of the Telxon, and had perjured and obstructed the ensuing SEC Telxon insider-trading investigation against GWP. This one particular SEC insider trading investigation was the catalyst for GWP's blackmail against Mr. Longmire, and therefore, the allegations in the Complaint and the attached Appendix which make reference to the Telxon investigation are integral to the complaint. This material undoubtedly cannot possibly be classified as an "allegation [which] bears no possible relation whatsoever to the subject matter of the litigation," Wahlstrom, supra, at *7 (citations omitted), and, therefore, should not be stricken.

Moreover, the information concerning the SEC's insider trading investigation was public. As the SEC's investigation is a matter of public record, defendants are hard-pressed to explain how the allegations which make reference to this public investigation could possibly be considered scandalous. Accordingly, the discussions about the SEC's Telxon investigation contained in paragraph 15, as well as those contained in paragraphs 57, 89, 90, 94, 95, and 104 of the Complaint, are all integral to an understanding of the background of, and motivation

behind, the defendants' acts of discrimination that they perpetrated against Mr. Longmire. The

SEC administrative proceedings are properly in the Complaint: (a) to establish independent

violations -- racial profiling and racial coercion -- that are unrelated to the underlying allegations

of certain "procedural violations," that were the subject matter of the settlement discussions, and

settled with the Order; (b) to establish the defendants' motivations in having committed these

independent claimed wrongs; and (c) because these allegations are so intertwined with plaintiff's

independent claim which is based upon wrongs, namely perjury and obstruction, that was

committed by the defendants in the course of their settlement discussions with the SEC.

Additionally, as to the information contained in those paragraphs (e.g. paragraph 90) which

discuss GWP's divorce proceeding, that divorce proceeding is a matter of public record as well.

GWP hired Mr. Longmire to work for him at the Department, and he retained his

services when he moved the Department to WPMC. The allegations contained in paragraphs 27-

30 of the Complaint refer to the circumstances that ultimately led to plaintiff's mistake of

confiding in GWP regarding his secret about his bi-racial heritage. Specifically, while at the

Department, plaintiff was offended by GWP's offensive racial remarks; while at WPMC,

plaintiff mistakenly believed that by complaining to GWP about his past racist remarks, and

revealing his secret, to GWP, this would deter GWP from making racist remarks, at least in

plaintiff's presence. In fact, this is explained in paragraph 33 of the Complaint, one of the

paragraphs which defendants did not challenge.

The allegation in paragraph 31 that GWP's poor investment decisions caused him

to be discharged from Prudential is a matter of public record and a  fact which can be easily

verified by viewing the web-site of the National Association of Securities Dealers (N.A.S.D.) at

NASD.com, under the "Arbitration & Mediation" tab (go to "Get Arbitration Awards" and then

proceed to "SAC's arbitration awards library), which contains a copy of the N.A.S.D. Award,
case # 91-03453 which states on page 3 that "P.S.I. [Prudential Securities Inc.] also alleges that
in 1990, its cumulative losses totaled $250 million with $70 million attributable to Risk
Arbitrage trading activities managed and controlled by [GWP]" and that as a result of such losses
Prudential "made the decision to close the Department as part of its overall decision to curtail
losing operations."   Additionally, the fact that GWP was terminated by Prudential is also
discussed in Prudential v. Wyser-Pratte, 187 A.D.2d 706, 589 N.Y.S.2d (1st Dep't 1992) ("Guy
P. Wyser-Pratte was terminated from his position as head of the Risk Arbitrage Department at
petitioner Prudential Securities.").  Accordingly, defendants cannot argue that this public
information should be stricken from the complaint.[1]  As set forth more fully in Mr. Longmire's
accompanying Affidavit, Prudential's discharge of GWP led to Mr. Longmire's "outing" himself
to GWP.  Accordingly, this information is material and should not be stricken.

   The allegation in paragraph 39 of the Complaint referring to testimony at the
SEC's Telxon deposition plainly supports the allegation in the preceding paragraph that "the
employees [at WPMC] had little contact with [Mr. Longmire]" as a result of the racially hostile
environment at WPMC.

   Paragraph 57 is material to the Complaint because it demonstrates that, in the
past, the defendants' had exploited, and attempted to bribe, Mr. Longmire for their own selfish
purpose.  Paragraphs 55 and 56 frame paragraph 57; in those two preceding paragraphs, Mr.
Longmire establishes that the defendants discriminated against him when they refused to let him
take his wife on her honeymoon, telling him that "people like you don't deserve honeymoons",

---

[1]   The fact that GWP has a habit of lying, and issues concerning his pattern of lying, is evidence that a jury may
consider in weighing the credibility of the parties. F.R.E. 406.  Accordingly, besides all the other legitimate
purposes for inclusion in the complaint, this information regarding GWP's discharge, as well as other information
concerning GWP's truthfulness, is properly in the Complaint.

while they allowed the white employees to go on their honeymoons. Viewed in this light, the "wedding gift"[2] from GWP was not a "gift" at all, but an attempt to exploit and bribe Mr. Longmire because: 1) it was sent precisely when GWP and his eponymous companies were under investigation by the SEC for insider trading in the securities of Telxon, 2) Mr. Longmire was called as a witness by the SEC; 3) the defendants had discriminated against Mr. Longmire two years before when they refused Mr. Longmire's honeymoon request; and 4) two years had passed since Mr. Longmire's wedding, and when GWP had not bothered to send a "wedding gift." That GWP would send a "wedding gift" to Mr. Longmire, given this set of facts, is the very definition of exploitation and bribery. This prior example of exploitation and bribery goes to Mr. Longmire's state-of-mind in this instant litigation as well.

Paragraphs 79 and 82 allege that GWP's ex-wife Vivien advised Mr. Longmire that GWP told her that GWP took advantage of plaintiff as a result of his race. There is not much that can be more material and relevant to a discrimination claim that an admission by the defendant that he racially discriminated. Defendants' contention that these allegations are somehow not relevant, are of no substance. The discussion about the divorce action goes to the core of plaintiff's claim of discrimination. GWP's threat of racial disclosure was the ultimate point-of-leverage that he knew he had against plaintiff.

Paragraphs 89 and 90 serve the same purpose as paragraph 15; they mention the SEC insider trading investigation, not to establish GWP's liability in the SEC consent decree, but rather to establish the defendants' motive as to why they racially profiled and racially coerced Mr. Longmire into committing crimes. Please see the above discussion pertaining to paragraph 15, as it applies here.

---

[2] The wedding gift was purchased at the James II antique gallery in New York City, and is a pair of antique silver candlesticks.

Paragraphs 94 through 100 all support plaintiff's contention that GWP was compelling plaintiff to testify falsely in GWP's divorce proceeding. These paragraphs also establish the plaintiff's state-of-mind -- that he found the position in which the defendants had place him, a relative stranger to GWP, to be entirely inappropriate, and even more so since he knew that GWP's own daughter had once refused to help her father by committing perjury during the SEC Telxon insider trading investigation. Of course, GWP was only able to do this because he knew he had leverage against the plaintiff.

The allegations in paragraph 104 of the Complaint demonstrate the extent to which their campaign, to coerce Mr. Longmire into accepting their illegal job assignment, was conduct that went beyond the pale because it involved the defendants' own lawyers who had represented them during the SEC Telxon insider trading investigation.

The allegations in paragraphs 105 and 106 of the Complaint demonstrate that defendants knew of plaintiff's complaints of hostility and abuse against them. Rather than stopping their illegal behavior, in order to contain the damage done by Mr. Longmire's complaints, the defendants attempted to replace the attorney to whom Mr. Longmire was complaining, WPMC's in-house counsel, with GWP's personal lawyer who had represented the defendants in the SEC Telxon insider trading investigation. Mr. Longmire was uncomfortable with this "switch," which also goes to his state-of-mind, and therefore he continued complaining to WPMC's in-house counsel. Finally, Mr. Longmire's uncontained complaints caused the defendants to retaliate against plaintiff by terminating his employment at WPMC.

4.    **The Appendices Are Also Not Immaterial,**
      **Impertinent or Scandalous Within the Meaning of Rule 12(f)**

Defendants argue that the appendices (Exhibit 1 to the Complaint) should be stricken because their content "comprises defamatory, inflammatory and impertinent statements calculated solely to embarrass and punish Mr. Wyser-Pratte and his family." See Zifchak Aff., ¶ 3. As set forth in the Complaint at paragraph 6, the appendices were attached to a Charge filed with the EEOC on or about November 12, 2004, more than seven months prior to defendants' attempt to strike this from the Complaint. Although defendants had previously attempted to have this same appendix stricken from the Charge as well, those attempts were unsuccessful.

As demonstrated directly below, the appendices should not be stricken because (a) the information in the appendices is so intertwined with plaintiff's case that to eliminate it would be unfairly to prevent plaintiff from having his right fully to present his case, (b) the information within the appendices shows the state of mind of the plaintiff who had knowledge of this information and, therefore, had reason to believe that the threat to "out" him would be executed, and (c) the majority of the information contained in the appendices relates to the SEC's Telxon investigation, an investigation which was not sealed and which is known by the public.

In Werner v. Satterlee, Stephens, Burke & Burke, 797 F.Supp.1196 (S.D.N.Y. 1992) (Haight, J.), defendants moved, pursuant to Fed. R. Civ. P. 12(f) to strike allegations from the complaint concerning "primarily investigations" by the SEC and the Internal Revenue Service ("IRS") of M&W, a holding company, (and others) which provided investment and underwriting services, principally in connection with the issuance, sale and trading of municipal securities in both primary and secondary markets. Id. at 1200, 1209. Defendant argued that the facts concerning those allegations were not material and moved pursuant to Fed. R. Civ. P. 12(f) to strike allegations in the complaint about investigations of M&W and others and that these

allegations were "irrelevant to a suit concerning securities fraud in connection with that offering. Id. at 1209. Plaintiffs responded that the events in the complaint "may be relevant to materiality, defendants' knowledge, motive, plan or constitute admissions" and that they "may have a relation to the case." Id. at 1209-1210. The Court noted that motions to strike "are not favored" and that they "will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter." Id. at 1210 (citing cases). The Court concluded that the allegations will not be stricken and that the determination of whether the allegations "were material must wait for the development of further proof." Id.

      Courts will also wait for the "development of further proof" prior to determining whether to grant a motion to strike in cases which, like the instant one, involve a motion to strike allegations in the complaint as well as an exhibit to the complaint. See, e.g., Leaseway Transportation Corp. v. Russell T. Soper, 1985 WL 1718 (N.D.Ill.). In Leaseway, as in the instant case, defendants moved pursuant to Rule 12(f) to strike certain paragraphs and portions of certain paragraphs and an exhibit to the complaint. Id at *3. The paragraphs that defendants in Leaseway sought stricken referred to the indictment and conviction of the defendant on a scheme to defraud. Id. Defendants there also sought to strike Exhibit F, a copy of Mr. Soper's indictment. Id. The Court noted that Rule 12(f) motions are "disfavored remedies, to be used sparingly and only when the ends of justice requires it." Id. (citing Lipsky, supra). The Court further stated that it "agrees with plaintiff that the materials sought to be stricken provide background material and lead to a fuller understanding of the allegations as a whole, and therefore should not be stricken at the pleading stage." Id. (citing 2A Moore's Federal Practice ¶12.21[2]). The Court concluded with the following:

> The question of whether the indictment will be admissible at trial, like most evidentiary questions, is better addressed later in the

> proceedings.  At this time, so early in the proceedings, the Court
> sees no reason to strike the material from the complaint.  Any
> prejudice that may arise in the future will be dealt with at that time,
> either by then striking the material or through the use of limiting
> instructions or any other procedure the Court deems necessary.
> Accordingly the motion to strike is denied.

Id.  Similarly, in the instant case, as in Werner and Leaseway, it would be

premature for the Court to determine that the material should be stricken from the complaint

before the "development of further proof" and plaintiff has had a full opportunity to demonstrate

to the Court how these allegations "lead to a fuller understanding of the allegations as a whole."

The appendices, as well as the Charge, show that Mr. Longmire knew what GWP

was capable of, in this married life, as shown in Appendix A, and the Charge; as well as in his

professional life, as shown in Appendices B-L.  The information in the appendices and the

Charge is the reason why Mr. Longmire believed that GWP's threat, against him and his family,

was not just an idle one, but a real one.  In short, the information in the appendices convinced

Mr. Longmire that he and his family faced a significant risk of being collateral damage as GWP

proceeded to damage his wife in his divorce action.  Striking the appendices will make it

impossible to properly replicate Mr. Longmire's state-of-mind, and hence, his position, making

this measurement "standard" anything but objective.

The cases cited by defendants, to strike the references to the SEC Telxon insider

trading investigation, and the EEOC administrative proceedings, in their memorandum of law are

all distinguishable from the instant case.  Defendants cite three cases to support their position

that the content at issue is immaterial the complaint.  These three cases have three commons trait

that makes them distinguishable from this instant case:  1) the plaintiff's state-of-mind; 2) the

plaintiff's actions; and 3) subsequent litigation, were not inexorably intertwined with the

challenged content, whereas they are in the instant case.  The first case cited by defendants in

their Memorandum of Law (at page 7), In re Merrill Lynch & Co., Inc., 218 F.R.D. 76, 78

(S.D.N.Y. 2003)(Pollack, J.), involves an Amended Complaint, which, as the Court noted, was

98 pages long and consisted of 367 paragraphs. Id. at 78. The Court also noted that the "present

pleading is so steeped with impertinent and verbose material that the Court is compelled to

reinforce Rule 8 with Rule 12(f). For the latter Rule is not only the appropriate remedy for the

striking of 'any redundant, immaterial, impertinent, or scandalous matter,' but 'also is designed

to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." Id.

(citation omitted). Although the Court cited Lipsky, supra, for the proposition that

administrative proceedings that did not result in adjudication on the merits are immaterial, as

made clear by the Court, Lipsky is referring to situations where the administrative proceeding is

referenced in the complaint "to prove underlying facts of liability." Id. at 78-79. As set forth

above and in plaintiff's accompanying Affidavit, the facts in the Appendix exhibit are not

brought to prove liability but rather, as explained above, to demonstrate the state of mind of the

plaintiff who had to be in a state of fear when working for GWP while at WPMC. Moreover, in

the instant case, unlike in Merryl Lynch, the Complaint is merely 28 pages in length,

approximately one quarter the length of the Merryl Lynch complaint. Therefore, it is not subject

to the same scrutiny as the prolix complaint in Merryl Lynch.

Merryl Lynch, supra, and Lipsky, supra, do not hold that it is impermissible for a

party to include material concerning an independent, non-adjudicated, SEC complaint, or SEC

consent decrees, respectively, for the purpose of proving something other than "underlying facts

of liability." Of course, if there is another permissible purpose, that material will not be stricken

from the complaint. See, e.g., U.S. v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1988) (SEC civil consent

admissible to show defendant knew of reporting requirements involved in the decree); Brotman

v. Nat'l Life Ins. Co., No. 94 CV 3468, 1999 WL 33109, *2 (E.D.N.Y. Jan. 22, 1999) (Johnson,

J.) (consent orders entered with New York State Education Department admissible to show

motive and to attack party's credibility).

Next, defendants cite Lewis v. Nissan North America, Inc., No. 04-562, 20004

U.S. Dist. LEXIS 10516 (S.D.N.Y. June 9, 2004) (Katz, J.) a case in which plaintiff placed

"clearly irrelevant, inflammatory factual matters in the Complaint, with corresponding exhibits,

relating to Plaintiff's interaction with the Attorney General's Office, the Better Business Bureau,

the Department of Motor Vehicles, and the police, in addition to her hospitalization and

psychiatric issues." Id at *11. The Court held that they were "irrelevant to Plaintiff's claims

against Defendants [that she was misled with regard to purchase of a Nissan automobile] and

there is no meaningful way in which Defendants can respond to them in their Answer. It is

therefore appropriate to strike this material from the Complaint." Id. Conversely, here, unlike

Nissan where the plaintiff's connection with defendants was merely the "one shot" purchase of

an automobile, here the facts are intertwined with the long and complex relationship between the

parties. Additionally, unlike the Nissan Complaint, in the instant case, it is entirely possible, and

quite easy, for defendants to respond to the Complaint. Therefore, Lewis has no bearing on the

instant action.

The third case cited by defendants, Pena v. Guzman, No. 03-5130, 2004 U.S.

Dist. LEXIS 1844 (S.D.N.Y. Feb. 11, 2004)(Stein, J.) is a recent case decided by this Court.

Pena involved a complaint in which plaintiff alleged that defendant "failed to pay him for

services Pena rendered under a contract." Id. at *1. Defendants moved to strike the allegations

in certain paragraphs of the complaint. Id. at *9. This Court first noted that "courts should not

tamper with pleadings unless there is a strong reason for so doing." Id. at *10 (citing Lipsky,

supra). This Court further noted that "[b]ecause 'motions to strike are not favored' such a motion will not be granted 'unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." Id. (citation omitted). This Court then examined each challenged portion of the amended complaint. Id. at *10-*11. The Court found certain of the challenged paragraphs to be proper and others to lack relevance. Significantly, this Court found that allegations about defendant's involvement in routing settlement funds through a British law firm and then to a Swiss bank account should not be stricken because "[t]hose allegations are potentially relevant." Id. at *11 (emphasis supplied). In the instant matter, given the complex relationship between the parties and the high degree of intertwining between the lengthy set of facts supporting the allegation and the challenged material, which predates this instant litigation, it cannot be said that the challenged material is not, at a minimum, "potentially" relevant. Accordingly, as all three cases cited by defendants are distinguishable, the Court should not strike the challenged material on the basis of relevance.

Defendants cite merely two cases to support their position that the content at issue should be stricken because it is "highly prejudicial to defendants." The first of those two cases cited by defendants in their Memorandum of Law (page 7) is Shahzad v. H.J. Meyers & Co., Inc., No. 95-6196, 1997 U.S. Dist. LEXIS 1128 (S.D.N.Y. Feb. 6, 1997) (Batts, J.) in which plaintiffs plead, inter alia, that the defendant had been the subject of several disciplinary actions and also mentioned an "unrelated complaint pending against Defendant." Id. at *40. The Court held that the material should be stricken because they were not relevant and because "it refers to a pending action not related to the present case." Id. Here, however, the challenged material is relevant as it, inter alia, shows the plaintiff's state of mind, and is certainly "related" to the instant case.

The only other case cited by defendants in an attempt to support their position is

G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp.2d 521 (S.D.N.Y. 2002)(Sweet, J.).  In G-I

Holdings, the Court granted a motion to strike the allegations that a law firm provided

"inducement" to medical experts to obtain their favorable testimony, specifically, that certain of

the law firm's female secretaries and paralegals were expected to and did "entertain" expert

witnesses who would visit the firm in connection with pending asbestos litigation, that at least

one partner of the firm indicated to his secretary that she should have sex with a particular expert

witness and that the law firm paid money to its female employees to "be nice to" certain of the

firm's expert and out-of state counsel.  Id. at 554.  There, the Court found that that this

information was irrelevant to the complaint and merely placed in the complaint to be scandalous.

Here, as set forth herein and in Mr. Longmire's Affidavit, the challenged material serves

multiple legitimate purposes and, therefore, is not irrelevant and should not be stricken.

> **(a)     The information in the appendices is so intertwined**
> **with plaintiff's case that to eliminate it would be**
> **to usurp plaintiff's right to present his case fully**

The first exhibit to plaintiff's complaint contains the plaintiff's previous filing to

the EEOC and the Division.  That filing included an Appendix comprised of twelve appendices.

Six of those twelve appendices revolve around the SEC's Telxon investigation of the defendants.

Specifically, Appendix A, B, F, G, H and L all deal, in whole or in part, with the SEC's

investigation into defendant's activities.  As demonstrated in the Complaint and as set forth more

fully in Mr. Longmire's accompanying affidavit, it was the defendants who actively involved

Mr. Longmire, against his will, to become drawn into that investigation as well as attempted to

have him perjure himself in GWP's divorce proceeding which involved the Telxon investigation.

Therefore, it would be unfair for defendants to challenge plaintiff's right to discuss the facts

surrounding the very investigation which was the catalyst for much of the discrimination endured by plaintiff at the hands of defendants. Even the defendants tacitly acknowledge this by <u>not</u> seeking to eliminate paragraphs 108 and 126 of the complaint, <u>which discuss the SEC Telxon investigation</u>, as those that they believe they have some basis to strike. <u>See</u> Exhibit A to Defendants' Motion to Strike.

> **(b)    The information contained in the appendices shows
> <u>Mr. Longmire's state of mind and is relevant</u>**

As set forth more fully in Mr. Longmire's Affidavit, the information in the appendices demonstrate why Mr. Longmire, having intimate knowledge of GWP's history of sordid activities, having worked closely with GWP for so many years and seeing what GWP was capable of doing, was so frightened by GWP's threats against him to reveal his racial secret and GWP's intimations of physical violence. Indeed, as the Complaint sets forth, plaintiff's worst fears were realized when defendants ultimately executed his threat to "out" plaintiff.

> **(c)    The majority of the information contained in the appendices
> relate to the SEC's Telxon investigation, an investigation
> <u>which was not sealed and which is known to the public</u>**

As set forth above, although the appendices address various activities of GWP, their primary focus is on the SEC's investigation into insider trading by GWP in the put options of Telxon. The Appendix at issue is comprised of twelve appendices, six of which revolve around this insider trading investigation; they are Appendix A, B, F, G, H and L. Defendants do not contest the fact that (as acknowledged by defendants' counsel at the August 11, 2005 Court Conference) the SEC's Telxon investigation was <u>not</u> sealed and was a <u>public</u> investigation. Therefore, the notion that the placement of the Telxon related information in a Complaint would cause irreparable harm to the defendants is ludicrous.

## **CONCLUSION**

For the reasons set forth above, and in the accompanying Affidavit of Eric A.

Longmire, defendants' motion to strike should be denied in its entirety.

Dated: New York, New York
September 6, 2005

WARSHAW BURSTEIN COHEN
SCHLESINGER & KUH, LLP

By: _____
Avi Lew
Attorneys for Plaintiff
555 Fifth Avenue
New York, NY 10017
(212) 984-7700

Of Counsel:
Martin R. Lee
Avi Lew